Green, J.
delivered the opinion of the court.
This bill is filed to enjoin the sale of certain property which has been levied on to satisfy the debts of complainant’s husband, Wm. Richards, and which the complainant claims as her separate property.
The complainant claims title under a deed from Henry Richards, dated 18th June, 1845, by which a number of horses and mules, cows, hogs, and household and kitchen furniture was conveyed to her.
The defendants are creditors of Wm. D. Richards, who is the son of Henry Richards, and the husband of the complainant. The defendants have caused executions to be levied on some of the horses and mules, conveyed in said deed, alledg-ing that the property so conveyed, belongs to their debtor, and has been conveyed in this deed in fraud of his creditors.
It appears from the pleadings and proof, that on the 29th of May, 1843, William D. Richards executed to Felix G. Earth-man, a deed of trust for six sevenths of a tract of land containing one hundred and two acres, together with his stock of horses, mules, cows, hogs, and household and kitchen furniture. The deed recites that the bargainor owes certain debts, and among them he owes debts to Charles S. Casey, secured by three notes; the first for $456 62 cents, due 2d Oct. 1838 ; the second for $343 87 cents, due 5th August 1838; and the third for $200, due 15th May 1838. The conveyance is made in trust, that if said Richards should fail to pay the debts mentioned in the deed, by the first day of January 1844, said Earthman was to sell all said property at public auction for cash, and apply the proceeds to the payment of said debts.
The debts were not paid, and in May or June 1844, Earth-man sold the property, and Henry Richards became the purchaser of the land, and all the personal property except one mule.
*329 The property was bid off for about $1000 for the whole, that was purchased by Henry Richards, of which sum, between $400 and $500 was paid. The land was conveyed by the trustee to Henry Richards, who afterwards sold and conveyed it to Gregg, receiving in part payment, a wagon and some mules and horses. These mules and horses, and also, all the personal property purchased by him at the trustee’s sale, were conveyed by Henry Richards to the complainant.
The defendants have levied executions on horses and mules conveyed in said deed, and insist that the deed from Wm. D. Richards to Earthman is fraudulent, and that the deed from Henry Richards to the complainant is also fraudulent, and made to hinder and delay the creditors of William Richards and as a consequence, they insist, that the property so conveyed to the complainant, is liable for the debts of William D. Richards.
1. It is very clear, that a bona fide purchaser, under a trust deed, gets a good title to the property so purchased, whether the deed were fraudulent or not.
If therefore Henry Richards were such bona fide purchaser, at the sale of the property conveyed by the trust deed to Earthman, he is not affected by any fraud between the parties to the deed.
It does not appear that Henry Richards knew any thing in relation to his son’s embarrassments, or of the execution of the deed of trust to Earthman, until long after the deed was made. His deposition has been taken, and he deposes to his entire ignorance of his son’s situation, until the day before the sale, and there is no reason to doubt the truth of his statement. The sale was fair, and a greater sum was paid by Henry Richards in discharge of the debts secured by the deed, than the price bid for all the personal property. So far, therefore, as the property conveyed to the complainant, consists of that purchased by Henry Richards at the trustee’s sale is con *330 cerned, we have no doubt Henry Richards’ title was unquestionable.
2. But it is said, that although Henry Richards may have had a good title to that part of the property conveyed by him to the complainant which he had purchased at the trust sale, still, his deed to Mildred Richards is fraudulent, because he had no title to the property obtained by the sale of the land to Gregg, part of which is also conveyed by this deed to the complainant.
We do not concur in this view of the case. If a party include in a deed by which he conveys part of his own property to another, other property which does not belong to him, the deed will be good so far as the bargainor had title, and as to the property included in it to which he had no title, it will be a mere nullity.
3. But we may enquire, whether Henry Richards did not have a title to all the property conveyed by him to the complainant.
It appears from the deposition of Henry Richards and the trustee, Earthman, that on the day of sale, Sims Casey, (who was brother of the complainant,) took said Richards aside, and proposed to him to buy all the property that was conveyed in the deed, stating that he would give his sister every dollar of the debt due him; thereupon, Richards agreed to buy the property, and did bid off the whole of it except one mule.
Soon after this and before the trustee had conveyed the land, Casey died. After the death of Casey, Earthman, the trustee, became his administrator, and the three notes before mentioned from Wm. D. Richards to Casey, fell into his hands. Earthman now demanded the balance of the money bid by H. Richards at the trust sale, amounting to about $450, before he would agree to convey the land. While this negotiation was going on, William D. Richards stated in the presence of Henry Richards, that he did not owe the notes mentioned in the *331 trust deed to Casey, and that the deed was intended to cover his property. Afterwards William D. Richards gave his own note with security for $150, and the note of the Greggs to whom the land was sold for $130, to the administrator of Casey. Mrs. Casey, who was entitled to one third of the money due on Henry Richards’ purchase, relinquished her claim; and thereupon, Earthman, as trustee conveyed the land to Henry Richards, who sold and conveyed the same to Greggs.
It is insisted, that the property received by Henry Richards from Greggs for this land, belonged to William Richards, and not to Henry, because it is said Henry Richards paid nothing for the land, and that the title passing through him to Greggs, was merely colorable, and intended to defraud William D. Richard’s creditors.
Earthman in his deposition says, the land was sold for $750, and the personal property for $250. He also says, Henry Richards had paid the amount of his purchase, except $450 or $470. Then, Henry Richards must have paid in the first instance $300 for the land, and the note of $130 executed by the Griggs and paid to Earthman as administrator of Casey, would make $430 in all paid by H. Richards for the land.
But, be this as it may, there is no question but that this land was purchased at the sale by H. Richards, and was conveyed to him by the trustees. Whether he has paid all the purchase money or not, we think, his title as against William D. Richards was a valid one; and when he sold the land to Greggs, the property he obtained in payment was his own property, and not that of William D. Richards. For if the transaction, as between Henry Richards and William D. Richards were fraudulent, still, the property obtained by Henry Richards in exchange for the land was not the property of William D. Richards, as between the parties to the fraud, and was not liable therefore, to be levied on by the executions of the credi *332 tors of William D. Richards. This point -was distinctly decided by this court, in the case cf Tubb vs. Williams, (7 Hump. R. 367,) and we are satisfied, was correctly settled. Whether, in such case, the creditor of a fraudulent vendor, may not reach the proceeds of the property which may have been obtained by a sale thereof by the fraudulent vendee, by a bill, properly framed for that purpose, we need not now determine. That question does not arise in this case, because, this is a -case of an attempt to satisfy executions at law, by levying them on such proceeds; and because we are not satisfied that there was any fraud on the part of Henry Richards in this transaction.
Whether the debts to Sims Casey were valid or not, he might well believe them to be so, and the purchase by him of the property and a conveyance of it to his daughter-in-law, was a natural and reasonable transaction, especially as Casey offered on his part, to give his debt to his sister. This offer and agreement, if Casey’s debts were valid, constituted the consideration for the deed of Henry Richards to the complainant, and exonerated him from the payment of. such part of the bid at the trustee’s sale, as would have been applied to these debts; so that if the debts were really due, the subsequent enforcement of them by-Earthman, the administrator of Casey, was unauthorized; and if they were ficticious, such enforcement was equally improper.
Upon the whole, we think the complainant shows an unquestionable title to this property, and we think the executions should be enjoined.
Reverse the decree.